UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| G. J. GUTIERREZ,<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>A. GUTIERREZ,<br><br>　　　　　Defendant. | 1:13-cv-00421-LJO-GSA-PC<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT DEFENDANT'S RULE 12(b)(6) MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM, OR BASED ON QUALIFIED IMMUNITY, BE DENIED<br>(Doc. 20.)<br><br>OBJECTIONS, IF ANY, DUE WITHIN THIRTY DAYS |

**I.    BACKGROUND**

　　G. J. Gutierrez ("Plaintiff") is a state prisoner proceeding pro se in this civil rights action pursuant to 42 U.S.C. § 1983.  This case now proceeds on the initial Complaint filed by Plaintiff on March 22, 2013, against defendant Correctional Officer A. Gutierrez ("Defendant") for use of excessive force and failure to protect Plaintiff, in violation of the Eighth Amendment. (Doc. 1.)

　　On June 5, 2014, Defendant filed a Rule 12(b)(6) motion to dismiss this action for failure to state a claim, or in the alternative, based on qualified immunity.  (Doc. 20.)  On August 19, 2014, Plaintiff filed an opposition to the motion.  (Doc. 35.)  On September 3, 2014, Defendant filed a reply.  (Doc. 38.)  Defendant's motion to dismiss is now before the court.

## II. PLAINTIFF'S ALLEGATIONS

Plaintiff is a state prisoner presently incarcerated at High Desert State Prison in Susanville, California. The events at issue in the Complaint allegedly occurred at Pleasant Valley State Prison in Coalinga, California (PVSP), when Plaintiff was incarcerated there.

Plaintiff alleges that on January 14, 2012, there was a prison disturbance involving rival gangs. Plaintiff alleges that thirteen inmates associated with the Fresno Bulldog gang "viciously, and for no apparent reason," attacked seven Southern Hispanic inmates. Plaintiff specifically alleges that:

> Plaintiff (a Southern Hispanic affiliate), was merely watching television when he was grabbed by the back of his shirt and stabbed and slashed repeatedly by a Fresno Bulldog affiliated prisoner. Naturally, Plaintiff attempted to defend himself and fight off his attackers as best he could. Plaintiff was bleeding profusely. Blood covered his entire face, head, and upper torso area.
>
> It was clear and plainly obvious to any human being that Plaintiff was the victim in this incident. After shots were fired and chemical agents deployed, all combatants (including Plaintiff) stopped fighting and lie on the floor in a prone position.
>
> Suddenly, and without warning, the Fresno Bulldog affiliated prisoners got back up and attacked the Southern Hispanic affiliated prisoners again.
>
> Gutierrez, who was part of the second responders, joined the already-set skirmish line, and witnessed the Fresno Bulldog affiliated prisoners get up from the floor to resume their attack on the Southern Hispanic affiliated prisoners that included Plaintiff.
>
> Gutierrez sadistically and maliciously aimed his 40mm launcher at Plaintiff's already slashed and bloody head and fired striking him directly above the left eye.
>
> The Fresno Bulldog affiliated prisoners then struck Plaintiff several more times in the face before breaking off their attack and resuming a prone position.
>
> As Plaintiff was en route to the hospital for treatment to his life-threatening wounds, Gutierrez approached Plaintiff and, in a low tone of voice, stated to Plaintiff, "I told you not to f**k with my people. The next time it'll be worse." (the term "my people" refers to the Fresno Bulldog affiliated prisoners)

///

///

(Complaint, Doc. 1, ¶¶8-16.) Plaintiff also alleges that Defendant's crime/incident report failed to acknowledge that Defendant witnessed the attack on Plaintiff by the Fresno Bulldog affiliated prisoners, and that Plaintiff was the victim and bleeding profusely.

### III. RULE 12(b)(6) MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

#### A. Prior Screening Order

Under the Prison Litigation Reform Act ("PLRA") the Court has a statutory duty to screen complaints in cases such as this and dismiss any claims that fail to state a claim upon which relief may be granted.  28 U.S.C. § 1915(e)(2); 28 U.S.C. § 1915A.   Given the requirements of the PLRA, the Court is disinclined to view with favor a subsequent motion seeking dismissal for failure to state a claim. On February 12, 2014, this Court issued an order indicating that it had screened Plaintiff's Complaint pursuant to 28 U.S.C. § 1915A and found that it stated cognizable claims against defendant Gutierrez for use of excessive force and failure to protect Plaintiff, in violation of the Eighth Amendment.  (Doc. 6.)  While the order finding cognizable claims did not include a full analysis,[1] the Court conducted the same examination as it does in all screening orders.  In other words, the Court's conclusion was based upon the same legal standards as this 12(b)(6) motion.

#### B. Legal Standard

In considering a motion to dismiss, the court must accept all allegations of material fact in the complaint as true. Erickson v. Pardus, 551 U.S. 89, 93–94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007); Hosp. Bldg. Co. v. Rex Hosp. Trustees, 425 U.S. 738, 740, 96 S.Ct. 1848, 48 L.Ed.2d 338 (1976).  The court must also construe the alleged facts in the light most favorable to the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984); Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir.1994) (per curiam).  All ambiguities or doubts must also be resolved in the plaintiff's favor. See Jenkins v. McKeithen, 395 U.S. 411,

---

[1] Generally, the Court provides a fully reasoned analysis only where it must explain why the complaint *does not* state at least one claim.  In cases where the complaint states only cognizable claims against all named defendants, the Court will issue a shorter screening order notifying plaintiff that his complaint states a claim and that he must submit service documents.

421, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969).  In addition, pro se pleadings are held to a less stringent standard than those drafted by lawyers.  See Haines v. Kerner, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

A motion to dismiss pursuant to Rule 12(b)(6) operates to test the sufficiency of the complaint.  Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).  "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  Scheuer, 416 U.S. at 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

The first step in testing the sufficiency of the complaint is to identify any conclusory allegations.  Ashcroft v. Iqbal, 556 U.S. 662, 679, 129 S.Ct. 1937, 1950 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id. at 1949 (citing Twombly, 550 U.S. at 555.  "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at 555 (citations and quotation marks omitted).

After assuming the veracity of all well-pleaded factual allegations, the second step is for the court to determine whether the complaint pleads "a claim to relief that is plausible on its face."  Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556) (rejecting the traditional 12(b)(6) standard set forth in Conley, 355 U.S. at 45-46).  A claim is facially plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. at 678 (citing Twombly, 550 U.S. at 556).  The standard for plausibility is not akin to a "probability requirement," but it requires "more than a sheer possibility that a defendant has acted unlawfully."  Id. (citing Twombly, 550 U.S. at 556).

///

In deciding a Rule 12(b)(6) motion, the court generally may not consider materials outside the complaint and pleadings. Cooper v. Pickett, 137 F.3d 616, 622 (9th Cir. 1998); Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994).

### C.     **Defendant's Motion**

Defendant argues that Plaintiff fails to state any claims against Defendant, because the facts in the Complaint establish that Defendant used reasonable force and acted reasonably to protect Plaintiff.

#### 1.     **Excessive Force – Eighth Amendment Claim**

"What is necessary to show sufficient harm for purposes of the Cruel and Unusual Punishments Clause [of the Eighth Amendment] depends upon the claim at issue . . . ." Hudson v. McMillian, 503 U.S. 1, 8 (1992). "The objective component of an Eighth Amendment claim is . . . contextual and responsive to contemporary standards of decency." Id. (internal quotation marks and citations omitted). The malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of whether or not significant injury is evident. Id. at 9; see also Oliver v. Keller, 289 F.3d 623, 628 (9th Cir. 2002) (Eighth Amendment excessive force standard examines *de minimis* uses of force, not *de minimis* injuries)). However, not "every malevolent touch by a prison guard gives rise to a federal cause of action." Id. at 9. "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind." Id. at 9-10 (internal quotations marks and citations omitted).

"[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Id. at 7. "In determining whether the use of force was wanton and unnecessary, it may also be proper to evaluate the need for application of force, the relationship

///

///

between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." Id. (internal quotation marks and citations omitted). "The absence of serious injury is . . . relevant to the Eighth Amendment inquiry, but does not end it." Id.

### **Defendant's Position**

Defendant argues that Plaintiff's allegations show that Defendant used reasonable force in response to a volatile situation. There was a major riot in the Dayroom on Facility C involving twenty inmates. Facility C officers responded and ordered inmates to get down. When the inmates did not comply, officers used OC blast grenades and fired rubber bullets from 40mm launchers. In response to these measures, the inmates assumed prone positions. Because of the magnitude of the riot, additional officers were summoned to aid the officers in Facility C.

Defendant was a second responder who joined the skirmish line just before the inmates got up and started fighting again. Despite multiple commands to get down, the inmates continued to fight. Defendant and five other correctional officers finally gained compliance by using additional OC grenades and firing additional rounds. Defendant fired a total of five rounds from his 40 mm launcher.

Defendant argues that based on the totality of the circumstances, Plaintiff's alleged facts and exhibits show that Defendant used reasonable and non-lethal force in an attempt to restore discipline to a rioting facility after other tactics had been unsuccessful, and Defendant did not shoot Plaintiff "maliciously and sadistically for the very purpose of causing harm." (Motion, Doc. 20-1 at 5-6.) Defendant argues that Plaintiff has not presented evidence to support his allegations about what Defendant witnessed and knew. Defendant finds it implausible that Defendant would have reason to "maliciously and sadistically" shoot Plaintiff in the face, and implausible that Defendant would have spoken to Plaintiff en route to the hospital, because Defendant was busy providing coverage for third responders and medical staff and performing

///

///

unclothed body searches of inmates, after which he collected their clothing as evidence. Defendant argues that is improbable that Defendant had an opportunity to threaten Plaintiff.

Defendant also argues that Plaintiff makes inflammatory generalized statements without personal knowledge, about prison officers staging prison assaults for nefarious reasons, intending to infer bad faith regarding Defendant's actions. Defendant also argues that Plaintiff's use of legally conclusory words "malicious" and "sadistic" is not enough to prove Defendant's actions amounted to an Eighth Amendment violation.

**Plaintiff's Position**

Plaintiff asserts that Defendant has omitted facts in Defendant's statement of the allegations, (1) that Plaintiff was minding his own business, watching television, when he was attacked by another inmate, (2) that he was assaulted by more than one attacker after the initial stabbing, (3) that Plaintiff was the victim and sustained life-threatening wounds requiring several days of hospitalization, and (4) that Defendant made a threatening remark to Plaintiff while en route to the hospital.

Plaintiff argues that there was no need for force against him, because "any human being would have determined," after witnessing the attack on Plaintiff and blood pouring from his wounds, that Plaintiff was in desperate need of rescuing, and that force was appropriate for his assailants. (Opposition at 7 ¶A.) Plaintiff notes that no prison guard, except Defendant, shot at Plaintiff, and that no other victims or assailants were shot in the face or head area. Plaintiff alleges that there were approximately 20-25 armed prison guards present, and overpowering the 13 assailants would have been strategic and effortless at minimum risk to any prison official. Plaintiff alleges that Defendant "makes [it] clear that he deliberately pointed his weapon at Plaintiff." (Opposition at 8:16-17.)

Plaintiff argues that Defendant could have regained control of the situation without shooting at Plaintiff, and therefore the right amount of force was not used.

Plaintiff argues Defendant is responsible for injuries to Plaintiff that were not *de minimus.* Plaintiff required sutures throughout his face, head, and neck and suffered permanent

///

disfigurement, permanent vision loss in his left eye, explosive headaches, memory loss, nightmares, paranoia, panic attacks, and more.

Plaintiff argues that Defendant knew that Plaintiff posed no threat to anyone, and the only reason he shot at Plaintiff was because Plaintiff "f**ked with [Defendant's] people." (Opposition at 11:5-6.)

Plaintiff also argues that more effort should have been made to temper the severity of a forceful response. Plaintiff argues that the 20-25 prison guards present could have moved in and stopped the attacking prisoners, and Defendant's "assertion that he had no choice but to blast away until he ran out of bullets is absurd." (Opposition at 11:23-25.) Plaintiff argues that Defendant could have used his baton to stop the two prisoners from attacking Plaintiff, and there was no need to discharge his 40mm weapon at all.

**Discussion**

The court looks to Plaintiff's allegations in the Complaint, taking as true any of Plaintiff's well-pleaded factual allegations and construing the alleged facts in the light most favorable to Plaintiff. The court finds Plaintiff's bare assertion that "Gutierrez sadistically and maliciously aimed his 40mm launcher" to be conclusory. However, the court finds Plaintiff's other allegations plausible, including allegations that Gutierrez witnessed the Fresno Bulldog affiliated prisoners attack Plaintiff, that Gutierrez aimed his 40mm launcher at Plaintiff's already slashed and bloody head and fired striking him directly above the left eye, that Gutierrez approached Plaintiff afterward and, in a low tone of voice, stated to Plaintiff, "I told you not to f**k with my people. The next time it'll be worse," and that Defendant omitted material facts from his report of the incident. These allegations, liberally construed, are sufficient to state a cognizable claim for use of excessive force.

Defendant's argument that it is implausible that Defendant would have spoken to Plaintiff en route to the hospital, because Defendant was too busy and did not have the opportunity to threaten Plaintiff, is based on facts not alleged in the complaint, which cannot be considered at this stage of the proceedings. In addition, whether Defendant only used

///

reasonable force in a good-faith effort to maintain or restore discipline is a question to be decided by the finder of fact and not by the court in this Rule 12(b)(6) motion.

## 2. Failure to Protect – Eighth Amendment Claim

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006). Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety. Farmer v. Brennan, 511 U.S. 825, 832-33, 114 S.Ct. 1970 (1994) (internal citations and quotations omitted). Prison officials have a duty to take reasonable steps to protect inmates from physical abuse. Farmer, 511 U.S. at 833; Hearns v. Terhune, 413 F.3d 1036, 1040 (9th Cir. 2005).

To establish a violation of this duty, the prisoner must establish that prison officials were "deliberately indifferent to a serious threat to the inmates's safety." Farmer at 834. The question under the Eighth Amendment is whether prison officials, acting with deliberate indifference, exposed a prisoner to a sufficiently substantial 'risk of serious damage to his future health . . . .'" Id. at 843 (citing Helling v. McKinney, 509 U.S. 25, 35 (1993)). The Supreme Court has explained that "deliberate indifference entails something more than mere negligence . . . [but] something less than acts or omissions for the very purpose of causing harm or with the knowledge that harm will result." Farmer at 835. The Court defined this "deliberate indifference" standard as equal to "recklessness," in which "a person disregards a risk of harm of which he is aware." Id. at 836-37. An officer can be held liable for failing to intercede only if he had a "realistic opportunity" to intercede. Cunningham v. Gates, 229 F.3d 1271, 1289 (9th Cir. 2000); Robins v. Meecham, 60 F.3d 1436, 1442 (9th Cir. 1995).

The deliberate indifference standard involves both an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious." Id. at 834. Second, subjectively, the prison official must "know of and disregard an excessive risk to inmate health or safety." Id. at 837; Anderson v. County of Kern, 45 F.3d 1310, 1313 (9th Cir. 1995). To prove knowledge of the risk, however, the prisoner may rely on circumstantial

evidence; in fact, the very obviousness of the risk may be sufficient to establish knowledge. Farmer, 511 U.S. at 842; Wallis v. Baldwin, 70 F.3d 1074, 1077 (9th Cir. 1995).

### Defendant's Position

Defendant argues that once Defendant was aware of the risk of harm posed by the riot, he took reasonable measures to abate it. Defendant argues that the complaint is devoid of any facts that Defendant was aware that the inmates were planning to riot in Facility C, that Defendant failed to prevent the riot from occurring, or that Plaintiff was an intended target. Defendant argues that the facts show that Defendant's actions were wholly intended to stop a riot and protect all of the Facility C inmates, including Plaintiff, as well as staff, from further harm. Defendant asserts that shooting Plaintiff above the eye was an accident made in good faith attempt to restore discipline during a significant riot where Plaintiff and the other inmates were moving targets. Defendant argues that there is no evidence that he knew Plaintiff faced a substantial risk of harm different than all the rioting inmates or that he ignored that risk, because once Defendant entered the Facility and the fighting recommenced, he used non-lethal force to avert harm after Plaintiff and others refused verbal commands to cease.

### Plaintiff's Position

Plaintiff argues that Defendant's conduct demonstrates that he failed to protect Plaintiff. Plaintiff alleges that Defendant failed to subdue the prisoners attacking Plaintiff or shoot toward the assailants, and this failure subjected Plaintiff to additional blows to the face and head and injuries from being shot by Defendant. Plaintiff alleges that Defendant failed to intercede in the incident on Plaintiff's behalf and instead shot Plaintiff because Plaintiff "f**ked with [Defendant's] people."

### Discussion

The court again looks to Plaintiff's allegations in the Complaint, taking as true any of Plaintiff's well-pleaded factual allegations. Plaintiff alleges in the Complaint that Defendant shot him in the eye while he attempted to defend himself against attacking inmates, and afterward threatened Plaintiff with worse consequences if he "f**cked with [Defendant's] people" again. Defendant's assertion that the shooting was an accident differs from Plaintiff's

account, and at this stage of the proceedings the court is required to resolve all ambiguities or doubts in Plaintiff's favor. Therefore, the court finds that Plaintiff states a cognizable claim for failure to protect Plaintiff, in violation of the Eighth Amendment.

### IV.     QUALIFIED IMMUNITY

Finally, Defendant argues that he is entitled to qualified immunity. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Id. "The protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" Id. (quoting Groh v. Ramirez, 540 U.S. 551, 567, 124 S.Ct. 1284, 157 L.Ed.2d 1068 (2004) (Kennedy, J., dissenting)).

As recognized by the Ninth Circuit, "government officials are entitled to raise the qualified immunity defense immediately, on a motion to dismiss the complaint, to protect against the burdens of discovery and other pre-trial procedures. The qualified immunity issue, in turn, cannot be resolved without first deciding the scope of the constitutional rights at stake. The unintended consequence of this confluence of procedural doctrines is that the courts may be called upon to decide far-reaching constitutional questions on a nonexistent factual record, even where . . . discovery would readily reveal the plaintiff's claims to be factually baseless. [Thus,] while government officials have the right, for well-developed policy reasons, to raise . . . the qualified immunity defense on a motion to dismiss, the exercise of that authority is not a wise choice in every case." Wong v. United States, 373 F.3d 952, 956-57 (9th Cir. 2004) (internal citations and quotations omitted).

///

In determining whether an officer is entitled to qualified immunity, the court must decide (1) whether facts alleged or shown by plaintiff make out a violation of constitutional right; and (2) whether that right was clearly established at the time of the officer's alleged misconduct. Pearson, 555 U.S. at 232 (citing Saucier v. Katz, 533 U.S. 194, 201 (2001). Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Id. at 236. In resolving these issues, the court must view the evidence in the light most favorable to plaintiff and resolve all material factual disputes in favor of plaintiff. Martinez v. Stanford, 323 F.3d 1178, 1184 (9th Cir. 2003).

"The measuring rod for determining whether an official's conduct violates a plaintiff's constitutional right was set forth by the Supreme Court in Ashcroft v. al-Kidd, – U.S. –, 131 S.Ct. 2074, 2083, 179 L.Ed.2d 1149 (2011): A Government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.' Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)." Lal v. California, 746 F.3d 1112, 1115-17 (9th Cir. 2014.)

With respect to the first prong of Saucier, as previously set forth, while Plaintiff's claims might well be proven to be baseless, at this stage on a motion to dismiss, the court is bound by federal notice pleading standards. Plaintiff has alleged that Defendant intentionally aimed at Plaintiff's head and shot him in the eye while Plaintiff was merely attempting to defend himself from attack by other inmates. Plaintiff has also alleged that his safety was endangered by a violent attack upon him, that Defendant was aware the danger existed, and that Defendant nonetheless shot at Plaintiff instead of attempting to stop the assailants leading to Plaintiff's serious injuries. As discussed above in this order, the court found that these allegations state cognizable claims against Defendant for use of excessive force and failure to protect Plaintiff, in violation of the Eighth Amendment. Therefore, at this stage, Plaintiff's allegations are sufficient to show that Defendant's conduct violated Plaintiff's constitutional rights. Saucier, 533 U.S. at 201.

Turning to the second prong, the court must determine whether Plaintiff's rights were clearly established. Id. The inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition . . . ." Saucier, 533 U.S. at 201. "[T]he right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Id. at 202 (citation omitted).

The incident at issue in Plaintiff's complaint allegedly occurred in January 2012. The law was clearly established at that time that an officer may not use excessive force against an inmate. The law concerning Eighth Amendment protections against excessive force was established in Whitley v. Albers, 475 U.S. 312, 320-321, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) (factors affecting whether force is excessive include "the need for the application of force, the relationship between the need and the amount of force that was used, [and] the extent of injury inflicted . . . But equally relevant are such factors as the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them, and any efforts made to temper the severity of a forceful response.") (internal quotation and citation omitted).

It was also clearly established, as early as June 1994, that "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners," and that a prison official violates an inmate's Eighth Amendment rights when the prison official exhibits deliberate indifference to the inmate's safety. Farmer, 511 U.S. at 833-34. By 1996, the Ninth Circuit had made clear that prison officials have a duty to "take reasonable measures to protect inmates from violence at the hands of other prisoners." Robinson v. Prunty, 249 F.3d 862, 866 (9th Cir. 2001). These and other cases had established that the failure of a prison official to respond to a known, credible threat to an inmate's safety constituted a violation of the inmate's Eighth Amendment rights. See Berg v. Kincheloe, 794 F.2d 457, 460-61 (9th Cir. 1986); Cunningham, 229 F.3d at 1289-90.

///

Granting dismissal to Defendant on the ground of qualified immunity is "improper if, under the plaintiff's version of the facts, and in light of the clearly established law, a reasonable officer could not have believed his conduct was lawful." Schwenk v. Hartford, 204 F.3d 1187, 1196 (2000). The court finds that, at the time of the attack on Plaintiff, the law was sufficiently clearly established to place a reasonable correctional officer on notice that harming a prisoner without a disciplinary or other permissible purpose violates the Eighth Amendment. The court also finds that a reasonable officer would have known that failing to protect an inmate from violent attack by other inmates, when the officer had occasion to intercede, is unlawful. Accordingly, the court finds that Defendant is not entitled to dismissal of the claims against him based on qualified immunity.

## IV. CONCLUSION AND RECOMMENDATIONS

With respect to Defendant's Rule 12(b)(6) motion to dismiss for failure to state a claim, the court finds that Plaintiff states cognizable claims against Defendant for use of excessive force and failure to protect Plaintiff, in violation of the Eighth Amendment. Therefore, the motion should be denied.

With respect to Defendant's motion to dismiss based on qualified immunity, the court finds that Defendant is not entitled to qualified immunity because the law was clearly established that an officer may not use excessive force against an inmate, and that an officer has a duty to intercede to protect an inmate from serious harm if he has the opportunity to do so. Therefore, the motion should be denied.

Accordingly, based on the foregoing, **IT IS HEREBY RECOMMENDED** that:

1. Defendant's Rule 12(b)(6) motion to dismiss for failure to state a claim be DENIED; and
2. Defendant's motion to dismiss the claims against him based on qualified immunity be DENIED.

These Findings and Recommendations will be submitted to the United States District Court Judge assigned to this action pursuant to the provisions of 28 U.S.C. § 636 (b)(1). Within **thirty (30) days** after being served with a copy of these Findings and

Recommendations, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten (10) days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the order of the District Court. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **September 17, 2014**                    **/s/ Gary S. Austin**
                                        UNITED STATES MAGISTRATE JUDGE