# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| G. J. GUTIERREZ,<br><br>    Plaintiff,<br><br>    v.<br><br>A. GUTIERREZ,<br><br>    Defendant. | Case No.: 1:13-cv-00421-SAB (PC)<br><br>ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br>(ECF No. 112) |

Plaintiff G. J. Gutierrez is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.

Currently before the Court is Defendant A. Gutierrez's motion for summary judgment, filed February 24, 2017 (ECF No. 112).

## I.

## RELEVANT HISTORY

This action proceeds on Plaintiff's complaint filed March 22, 2013, alleging excessive force and failure to protect against Defendant A. Gutierrez in violation of the Eighth Amendment. (ECF No. 1.) After Defendant's motion to dismiss was denied, Defendant filed an answer to Plaintiff's complaint on November 19, 2014. (ECF No. 40.) A discovery and scheduling order was issued on November 21, 2014. (ECF No. 41.)

1

On February 24, 2017, following the resolution of various discovery disputes and extensions of the dispositive motion deadline, Defendant filed the subject motion for summary judgment. (ECF No. 112.) Plaintiff then requested, and was granted, an extension of time to file an opposition to Defendant's motion for summary judgment. (ECF No. 116.)

On April 7, 2017, Plaintiff filed his opposition to Defendant's motion for summary judgment. (ECF No. 118.) On April 17, 2017, Defendant filed a reply to Plaintiff's opposition to the motion for summary judgment. (ECF No. 120.)

Pursuant to Local Rule 230(l), Defendant's motion for summary judgment is deemed submitted for review without oral argument.

## II.

## LEGAL STANDARD

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mut. Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

In resolving cross-motions for summary judgment, the Court must consider each party's evidence. Johnson v. Poway Unified Sch. Dist., 658 F.3d 954, 960 (9th Cir. 2011). Defendants do not bear the burden of proof at trial; thus, in moving for summary judgment, they need only prove an absence of evidence to support Plaintiff's case. In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010). "If the moving party meets its initial burden, the non-moving party must set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for

trial.'" Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, (1986)).

In judging the evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, Soremekun, 509 F.3d at 984 (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted).

In ruling on this motion, the Court has carefully reviewed and considered all arguments, points and authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any, objections, and other papers filed by the parties. Omission of reference to an argument, document, paper, or objection is not to be construed to the effect that this Court did not consider the argument, document, paper, or objection. This Court thoroughly reviewed and considered the evidence it deemed admissible, material, and appropriate.

## III.

## DISCUSSION

### A. Summary of Plaintiff's Complaint[1]

In his complaint, Plaintiff alleges that on January 14, 2012, there was a prison disturbance involving rival gangs. Thirteen inmates associated with the Fresno Bulldog gang "viciously, and for no apparent reason," attacked seven Southern Hispanic inmates. Plaintiff specifically alleges that:

> Plaintiff (a Southern Hispanic affiliate), was merely watching television when he was grabbed by the back of his shirt and stabbed and slashed repeatedly by a Fresno Bulldog affiliated prisoner. Naturally, Plaintiff attempted to defend himself and fight off his attackers as best he could. Plaintiff was bleeding profusely. Blood covered his entire face, head, and upper torso area.
>
> It was clear and plainly obvious to any human being that Plaintiff was the victim in this incident. After shots were fired and chemical agents deployed, all

---

[1] Plaintiff's complaint is verified, and therefore constitutes an opposing affidavit for purposes of ruling on a motion for summary judgment. Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004).

combatants (including Plaintiff) stopped fighting and lie on the floor in a prone position.

Suddenly, and without warning, the Fresno Bulldog affiliated prisoners got back up and attacked the Southern Hispanic affiliated prisoner again.

[Defendant] Gutierrez, who was part of the second responders, joined the already set skirmish line, witnessed the Fresno Bulldog affiliated prisoners get up from the floor to resume their attack on the Southern Hispanic affiliated prisoners that included Plaintiff.

[Defendant] Gutierrez sadistically and maliciously aimed his 40mm launcher at Plaintiff's already slashed and bloody head and fired striking him directly above the left eye.

The Fresno Bulldog affiliated prisoners then struck Plaintiff several more times in the face before breaking off their attack and resuming a prone position.

As Plaintiff was enroute to the hospital for treatment to his life-threatening wounds, Gutierrez approached Plaintiff and, in a low tone of voice, stated to Plaintiff, "I told you not to f**k with my people. The next time it'll be worse (the term 'my people' refers to the Fresno Bulldog affiliated prisoners)."

(Compl. ¶¶ 8-16.)

### B. Disputed and Undisputed Material Facts[2]

#### 1. Parties

The parties agree that at the time of the events at issue, Plaintiff was an inmate in the custody of the California Department of Corrections and Rehabilitation ("CDCR") at Pleasant Valley State Prison ("PVSP"). Defendant was employed by CDCR at PVSP as a Search and Escort Officer.

Defendant contends that he was assigned to work at Facility D at the time of the events at issue. Plaintiff contends that on various occasions, Defendant had worked at Facility C, where Plaintiff was housed, and although he never spoke to Defendant, he recognized Defendant's face.

///

///

---

[2] The summary of disputed and undisputed material facts is derived from Defendant's statement of undisputed facts, filed on February 24, 2017, (ECF No. 112-2), Plaintiff's response to that statement of facts, (ECF No. 118, at pp. 22-36), and Plaintiff's declaration in support of his opposition to Defendant's motion for summary judgment, (id. at 14-20).

4

### 2. Stabbing of Plaintiff on January 14, 2012 and Use of Chemical Agents

Defendant contends, for the purpose of this motion, that on January 14, 2012 at approximately 7:37 p.m., a riot erupted between two disruptive prison groups—the Fresno Bulldogs and the Southern Hispanics—in the day room of Building 2 on Facility C, at PVSP. The riot began when a Fresno Bulldog affiliated inmate grabbed Plaintiff by the back of his shirt and repeatedly stabbed and slashed Plaintiff.

Plaintiff now denies that he is a member of the Southern Hispanic gang, and instead alleges that he lived in Southern California prior to his incarceration, but is non-affiliated. Plaintiff also denies the characterization of the events on January 14, 2012 as a "riot." Plaintiff agrees, however, that at about 7:00 p.m. he was sitting on a bench watching television when he was stabbed and slashed on both sides of his face by a Fresno Bulldog gang member. Plaintiff asserts that he and six other people were victims attacked by the Fresno Bulldog gang members.

Defendant contends that Plaintiff fought with his attacker, whereas Plaintiff contends that he attempted to defend himself while he was stabbed and slashed by attackers. Plaintiff alleges that he was bleeding profusely, and could not hear any commands to get down by prison officials.

Both parties agree that chemical agents (Oleoresin Capsicum ("OC") Instantaneous Blast Grenades) were deployed and 40 mm Projectile Launchers were used, causing all prisoners to cease any attacks or fighting. Plaintiff alleges that once his attackers got into a prone position and ceased attacking him, he also assumed a prone position.

Defendant contends that within approximately thirty seconds, a Fresno Bulldog affiliated inmate got back up and resumed fighting, causing all previously-involved combatants, including Plaintiff, to re-engage in the riot. Defendant further contends that at this time, second and third responders came to the Facility C dayroom, and Defendant was among the second responders who reported to Building 2 at this time.

Plaintiff disputes some of these allegations. Plaintiff contends that after the inmates had gotten into prone positions, there was sufficient time for the prison officials to "subdue" the thirteen assailant-inmates, particularly those who had makeshift weapons. Plaintiff contends that there were ten to twelve prison guards armed with batons, OC spray, grenades, and mechanical restraints. Plaintiff

5

further contends he was on the ground long enough to determine that his bleeding did not slow, his face and head began pulsating, and he felt burning sensations on his wounds. Plaintiff then suddenly felt someone kicking him in his facial and head area, and realized that he was again being attacked. Plaintiff was compelled to get off the ground and defend himself, but his legs felt wobbly, he felt weak, and blood spewed from his body.

3. <u>Defendant's Discharge of His Non-Lethal Launcher</u>

According to Defendant, when he arrived at Building 2 from his regularly assigned post on Facility D, he joined an already-set skirmish line as a second responder, with a 40 mm Direct Impact Multi Launcher—a non-lethal launcher that discharges foam/rubber rounds. Defendant declares that he observed two Fresno Bulldog affiliated inmates (Fimbres and Navarro) get up from prone positions, race towards a Southern Hispanic affiliated inmate (Reyes), and begin fighting. Defendant declares that he ordered them to get down, with negative results, so he fired his 40 mm launcher at Fimbres's lower extremities, and missed. Defendant contends that he then fired additional rounds at Fimbres and Reyes, striking them both in the hip, after which all three inmates stopped fighting and got down on the floor on their stomachs.

Defendant declares that he next observed Plaintiff fighting with two other inmates, despite multiple orders to get down. According to Defendant, Plaintiff did not appear injured or bleeding, but was actively fighting and "appeared to be holding his own." (Def.'s Decl., ECF No. 112-4, ¶ 15.) Defendant contends that he ordered the inmates to get down with no results, and then aimed and fired his launcher at Plaintiff's lower extremities, striking Plaintiff on his left leg. Defendant observed that the round had no effect on Plaintiff, who continued to fight with the two other inmates. Defendant next declares that he again aimed and fired at Plaintiff's lower extremities, but because Plaintiff was constantly moving and bending at the waist, the round inadvertently struck Plaintiff above the right eye. Defendant contends that Plaintiff and the two combatants then stopped fighting, and got on the floor.

According to Defendant, he had no further interaction with Plaintiff after Plaintiff complied with orders to get down, and that other than giving orders to get down, he did not speak with Plaintiff. Defendant declares that he only continued to observe and provided coverage while staff handcuffed

6

the involved inmates, and medical staff evaluated the injured inmates. Defendant further declares that he never intended to hit anyone in the head when discharging his weapon, and although he felt it reasonable and necessary to discharge his weapon at Plaintiff under the circumstances, he unintentionally hit Plaintiff above Plaintiff's right eye with his last round.

Plaintiff disputes Defendant's version of these events. As noted above, Plaintiff contends that after the use of chemical agents, as he was on the ground, he was kicked and hit in his facial and head area, and was compelled to get off the ground and defend himself. Plaintiff declares that he did not hear Defendant tell anyone to get down, nor did he witness inmates Fimbres or Reyes get struck on their hips with any 40 mm projectiles. Plaintiff further contends that he was obviously being attacked by two Fresno Bulldog affiliated inmates, and due to the circumstances, such as his injuries and profuse bleeding, it was also obvious that he was the victim and needed rescuing.

Plaintiff declares that he then saw Defendant deliberately point, aim, and fire his weapon at Plaintiff in the face. The projectile struck Plaintiff in his right eye, and he alleges it made him more weak and disoriented, and he almost passed out. He further alleges that he was in excruciating pain, felt dizzy and lightheaded, felt his heart pumping extremely fast, had difficulty catching his breath, felt as though he was going to vomit, and felt as though his head was going to explode. Plaintiff then declares that the two Fresno Bulldog gang members struck Plaintiff several more times in his open wounds after he was shot, and then resumed prone positions.

Contrary to Defendant's contentions that he and Plaintiff had no further interactions, Plaintiff declares that as he was fading in and out of consciousness, Defendant looked directly at him and stated, "I told you not to fuck with my people. The next time, it'll be worse." (Pl.'s Decl., ECF No. 118, p. 18 at ¶ 29.) Plaintiff did not respond to Defendant, but understood that Defendant meant the people who attacked Plaintiff were Defendant's "people" and that Defendant deliberately shot Plaintiff in the face.

Defendant denies that he was aware of any inmate's gang affiliation or association when he entered Building 2, or that he could differentiate between the individuals who were the initial aggressors or victims during the riot. Defendant denies that he saw who started the riot, how the riot started, or why it started.

7

Plaintiff disputes these contentions. As noted above, Plaintiff contends that he had seen Defendant working in Facility C on various prior occasions. According to Plaintiff, PVSP has a policy that "tags," or signs, are placed on the outside of the cell doors of each prisoner, referencing race and/or gang affiliation, notifying everyone which prisoners are non-affiliated, and which prisoners are gang affiliated. Multiple tags are used if there are multiple prisoners in a cell, such that a tag near the top of the door represents the prisoner on the top bunk, and the tag near the bottom represents the prisoner on the bottom bunk. For Hispanic prisoners, a purple tag with a dog's paw print is used to represent cells occupied by Fresno Bulldog gang members, and an orange tag is used to represent Southern Hispanic gang members, or prisoners who lived in Southern California prior to their prison commitments. Plaintiff contends that pursuant to this tag policy and from his time spent on Facility C, Defendant was aware that Plaintiff was not a Fresno Bulldog gang member.

4. Plaintiff's Alleged Injuries

Defendant contends that following the incident, Plaintiff was evaluated by prison medical staff and transported to an outside hospital for additional care. Plaintiff contends that as a result of being shot in the face with a high-powered 40 mm launcher, he sustained memory and vision loss, as well as other issues which affect his ability to recall issues, concentrate, and sleep.

**C.  Defendant's Motion for Summary Judgment**

Defendant argues that he is entitled to summary judgment because the undisputed facts show that he used permissible and minimal force to restore order, and that he took affirmative steps to protect Plaintiff from further harm. Defendant also asserts that he is entitled to qualifiedly immunity because he acted reasonably and in good faith to restore order and discipline when he responding to the ongoing riot.

Plaintiff opposes Defendant's motion, arguing that there are disputed issues of material fact. Plaintiff asserts that he has submitted evidence that Defendant failed to protect him from being assaulted by Fresno Bulldog gang members, and instead purposely shot him in the face when he was an obvious victim needing to be rescued. Plaintiff also argues that Defendant is not entitled to qualified immunity here because there is evidence showing that Defendant did not act in a good-faith effort to restore discipline.

In reply to Plaintiff's opposition, Defendant argues that the Court should disregard Plaintiff's declaration in support of his opposition because it contradicts Plaintiff's deposition testimony. Defendant asserts that Plaintiff cannot create a factual dispute here through a sham affidavit or declaration, and therefore there is no evidence that Defendant fired his weapon at Plaintiff maliciously or sadistically for the purpose of harming Plaintiff.

1. <u>Excessive Force and Failure to Protect Claims</u>

Defendant first asserts that the agreed facts show his shooting of Plaintiff was reasonable and justified under the circumstances, and therefore he is entitled to summary judgment here.

The unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment. <u>Hope v. Pelzer</u>, 536 U.S. 730, 737 (2002) (citing <u>Whitley v. Albers</u>, 475 U.S. 312, 319 (1986)) (quotation marks omitted). Among unnecessary and wanton inflictions of pain are those that are totally without penological justification, <u>Hope</u>, 536 U.S. at 737 (citing <u>Rhodes v. Chapman</u>, 452 U.S. 337, 346 (1981)) (quotation marks omitted), and punitive treatment which amounts to gratuitous infliction of wanton and unnecessary pain is prohibited by the Eighth Amendment, <u>id</u>. at 738 (quotation marks omitted).

What is necessary to show sufficient harm under the Eighth Amendment depends upon the claim at issue, with the objective component being contextual and responsive to contemporary standards of decency. <u>Hudson v. McMillian</u>, 503 U.S. 1, 8 (1992) (quotation marks and citations omitted). For excessive force claims, the core judicial inquiry is whether the force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. <u>Wilkins v. Gaddy</u>, 559 U.S. 34, 37 (2010) (per curiam) (citing <u>Hudson</u>, 503 U.S. at 7) (quotation marks omitted). In determining whether the use of force was wanton and unnecessary, courts may evaluate the extent of the prisoner's injury, the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response. <u>Hudson</u>, 503 U.S. at 7 (quotation marks and citations omitted).

Defendant specifically argues in this case that the <u>Hudson</u> factors weigh in his favor based on his account of the events at issue. Defendant's argument is premised on the position that Plaintiff's

account of events in his declaration submitted in opposition to Defendant's summary judgment motion should be disregarded as a sham affidavit, because it contradicts Plaintiff's deposition testimony.

"The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." Van Asdale v. Int'l Game Tech., 577 F.3d 989, 998 (9th Cir. 2009) (quoting Kennedy v. Allied Mut. Ins. Co., 952 F.2d 262, 266 (9th Cir. 1991)). "[I]f a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." Id. (quoting Kennedy, 952 F.2d at 266).

However, the Ninth Circuit has urged caution in applying this sham affidavit rule. "Aggressive invocation of the rule . . . threatens to ensnare parties who may have simply been confused during their deposition testimony and may encourage gamesmanship by opposing attorneys." Van Asdale, 577 F.3d at 998. To avoid this, the Ninth Circuit has imposed two limitations on the application of the rule. First, the district court must make a "factual determination that the contradiction was actually a 'sham'" as opposed to an honest discrepancy, mistake, or newly discovered evidence. Kennedy, 952 F.2d at 267. Second, "the inconsistency between a party's deposition testimony and subsequent affidavit must be clear and unambiguous to justify striking the affidavit." Van Asdale, 577 F.3d at 998–99.

In this case, Defendant argues that Plaintiff has been inconsistent about whether he knew what Defendant's intentions were in the use of force against Plaintiff. Plaintiff's verified complaint and declaration submitted in support of his opposition both state that after Plaintiff was shot, Defendant said to Plaintiff, "I told you not to fuck with my people. The next time it'll be worse." In Plaintiff's declaration, he testified that he understood this to mean that the Fresno Bulldog affiliated inmates who attacked him were Defendant's "people" and that Defendant had deliberately shot him. (Pl.'s Decl. ¶ 31.) Defendant argues that the declaration contradicts Plaintiff's deposition testimony that he could not speak for Defendant's intentions.

The Court disagrees that there is a clear and unambiguous inconsistency here sufficient to justify striking Plaintiff's declaration. The relevant deposition testimony is as follows:

| | | |
|---|---|---|
| 1 | Q. | So what facts do you have that [Defendant] acted with malice? |
| | A. | A head shot is deliberate. |
| 2 | Q. | Okay. There's no chance that a head shot is accidental? |
| 3 | A. | No. |
| | Q. | Okay. Okay. And so if [Defendant] was acting with malice, why do you state he was acting with malice? |
| 4 | A. | Did it deliberate to cause pain. |
| 5 | Q. | Okay. And why? |
| | A. | I can't speak for the officer's intentions. |
| 6 | Q. | But you are -- |
| 7 | A. | Why he was acting that way. |
| | Q. | But you are. When you're saying that somebody acts with malice, you're stating that he's acting with a certain intent. So why was he acting with malice? |
| 8 | A. | Apparently his intent was I was messing with his people. |
| 9 | Q. | Okay. And you've already stated that messing with his people means the Fresno Bulldogs, correct? |
| 10 | A. | Correct. |

(Pl.'s Depo. 96:9-97:5.) Plaintiff also declared that his deposition testimony that he could not speak for Defendant's intentions was inadvertent. (Pl.'s Decl. ¶ 39.)

Plaintiff's deposition testimony here is largely consistent with his complaint allegations and declaration that Defendant deliberately shot him in the head, as shown by Defendant's alleged statement afterwards that, "I told you not to fuck with my people. The next time it'll be worse." Any nuances regarding Plaintiff's statements about the extent to which he understood Defendant's intentions or motivations are matters of credibility, which must be determined by the trier of fact during trial.

Defendant also argues that the Court should disregard Plaintiff's statement in his declaration that Defendant was referencing the Fresno Bulldog affiliated inmates when Defendant referred to "my people." (Pl.'s Decl. ¶ 31.) Defendant argues that during Plaintiff's deposition, Plaintiff admitted to having no knowledge as to what Defendant meant by "my people." In support, Defendant cites the following testimony:

| | | |
|---|---|---|
| 25 | Q. | Okay. In your complaint you allege that Officer Gutierrez is a Fresno Bulldog, what do you base this on? |
| 26 | A. | It's all speculation and gossip, all the Bulldogs in that Seg unit. |
| 27 | Q. | You're basing that all on speculation and gossip? |
| | A. | Yes. |
| 28 | Q. | Okay. And are there any other officers that you believe are Fresno Bulldogs? |

11

| | | |
|---|---|---|
| 1 | A. | I can't answer that question. |
| | Q. | Why not? |
| 2 | A. | I don't know. |

(Pl.'s Depo. 45:7-19.)

However, when asked to explain this point further elsewhere in the deposition, Plaintiff testified as follows:

| | | |
|---|---|---|
| | Q. | And you're sitting by yourself? Okay. And Officer Gutierrez came up to you and said what? |
| | A. | "Next time it will be worse, don't mess with my people." He said the "F" word, but I don't want to say it for the record. |
| | Q. | And you interpreted that to mean what? |
| | A. | The Bulldogs. |
| | Q. | And based on what? |
| | A. | The threat. |
| | Q. | Okay. But you have no independent recollection, and there's just speculation that Officer Gutierrez is affiliated with the Bulldogs; is that correct? |
| | A. | Well, you have all the Bulldogs bragging that he's their buddy, so I can't --- |
| | Q. | So what inmates are bragging that he's their buddy? |
| | A. | I don't' have all their names, I'd have to get an ASU log and – |
| | Q. | No, I am asking you. |

(Pl.'s Depo. 66:9-67:3.)

Plaintiff's deposition testimony does not show a clear and unambiguous conflict sufficient to justify striking his declaration. Plaintiff has offered an explanation in his deposition testimony for his understanding of the meaning of Defendant's alleged statements, based on inferences from the evidence, including Defendant's alleged threat after the incident, Defendant's alleged knowledge of the gang affiliations and non-affiliations in Facility C, and alleged "bragging" by other inmates. Although this evidence may not be of a particularly strong or convincing nature, the weight to be given to such inferences is an issue of credibility for the trier of fact to determine.

Based on the foregoing, the Court does not find it appropriate to apply the sham affidavit rule here to disregard any part of Plaintiff's declaration. Thus, the Court declines to grant Defendant's request, and finds Plaintiff's declaration admissible for purposes of summary judgment. The Court next turns to evaluating Defendant's arguments that he is entitled to summary judgment here based on the undisputed facts. While this may be an issue at trial for the Plaintiff through cross-examination by defendants, it is not one which requires imposition of the sham affidavit rule.

12

In considering the evidence, the Court finds there are genuine issues of material fact which preclude summary judgement on Plaintiff's claim that Defendant used excessive force in violation of the Eighth Amendment. Considering the Hudson factors, Plaintiff has submitted evidence that he was severely injured when Defendant came upon the scene and was not acting aggressively, was then attacked, defended himself, and was in need of rescuing. According to Plaintiff, Defendant instead deliberately aimed at Plaintiff's face and shot him, and Plaintiff suffered severe injuries as a result.

Although Defendant disputes this version of events, the facts must be viewed in the light most favorable to the non-moving party to the extent there is a genuine dispute regarding those facts. See, e.g., Scott v. Harris, 550 U.S. 372, 380 (2007); see also Cortez v. Skol, 776 F.3d 1046, 1052–53 (9th Cir. 2015) ("Although Defendants' interpretation is certainly a plausible one and could be argued to a jury, it is not compelled by the record, and we are required to view the evidence in the light most favorable to Plaintiff."). Viewing the facts in the light most favorable to Plaintiff, a reasonable jury could find in his favor on his excessive force claim, precluding summary judgment here.

For similar reasons, the Court also rejects Defendant's argument that he is entitled to summary judgment on Plaintiff's claim for failure to protect in violation of the Eighth Amendment. Prison officials have a duty to protect prisoners from violence at the hands of other inmates. Farmer v. Brennan, 511 U.S. 825, 833 (1994). The failure of prison officials to protect inmates may rise to the level of an Eighth Amendment violation when "(1) the deprivation alleged is 'objectively, sufficiently serious' and (2) the prison officials had a 'sufficiently culpable state of mind,' acting with deliberate indifference." Hearns v. Terhune, 413 F.3d 1036, 1040 (9th Cir. 2005) (quoting Farmer, 511 U.S. at 834).

With regard to the first prong, an inmate making a failure to protect claim satisfies the "sufficiently serious deprivation" requirement by "show[ing] that he is incarcerated under conditions posing a substantial risk of serious harm." Lemire v. California Dep't of Corr. & Rehab., 726 F.3d 1062, 1075 (9th Cir. 2013) (quoting Farmer, 511 U.S. at 834). To satisfy the second prong, a defendant must have been aware of facts from which the inference could be drawn that a substantial risk of harm exists, and he must also have drawn and disregarded that inference. Farmer, 511 U.S. at 837.

Here, Defendant notes that Plaintiff's claim is based on his allegations that Defendant saw two Fresno Bulldog affiliated inmates get up and attack Plaintiff, and did not take any action to aid or protect him. Defendant asserts that there is a lack of evidence supporting that claim, because he declared he was focused on subduing inmates Fimbres, Navarro, and Reyes, and did not see that Plaintiff was injured or unable to fight. However, Plaintiff has submitted evidence raising a genuine dispute of fact regarding whether he was visibly seriously injured such that he was unable to fight off two attackers, and whether Defendant observed his condition. Plaintiff has also submitted evidence from which a reasonable jury could determine that Defendant acted with deliberate indifference to the risk to Plaintiff, and instead deliberately shot Plaintiff in the face, based on some kind of allegiance with Plaintiff's attackers. Whose disputed testimony and evidence to credit here is a matter for the jury to determine. Accordingly, the Court finds that genuine issues of disputed fact preclude summary judgment on Plaintiff's Eighth Amendment failure to protect claim.

### 2. Qualified Immunity

Defendant also moves for summary judgment on Plaintiff's claims on the grounds of qualified immunity. The doctrine of qualified immunity protects government officials from civil liability where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). To determine if an official is entitled to qualified immunity the court uses a two part inquiry. Saucier v. Katz, 533 U.S. 194, 200 (2001). The court determines if the facts as alleged state a violation of a constitutional right and if the right is clearly established so that a reasonable official would have known that his conduct was unlawful. Saucier, 533 U.S. at 200.

The district court is "permitted to exercise [its] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Pearson, 555 U.S. at 236. The inquiry as to whether the right was clearly established is "solely a question of law for the judge." Dunn v. Castro, 621 F.3d 1196, 1199 (9th Cir. 2010) (quoting Tortu v. Las Vegas Metro. Police Dep't., 556 F.3d 1075, 1085 (9th Cir. 2009)). In deciding whether officials are entitled to qualified immunity, the court is to view the evidence in the

light most favorable to the plaintiff and resolve all material disputes in the favor of the plaintiff. Martinez v. Stanford, 323 F.3d 1178, 1184 (9th Cir. 2003). Regarding the second step of the inquiry, "[f]or a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable officer would understand that what he/she is doing violates that right." Hope v. Pelzer, 536 U.S. 730, 739 (2002).

Here, Defendants asserts that he is entitled to qualified immunity because he used reasonable force in light of the circumstances of the riot, and in light of Plaintiff's failure to respond to verbal commands, chemical agents, and lesser uses of force. However, as discussed above, Plaintiff has raised a genuine issue of material fact as to whether Defendants intentionally shot Plaintiff in the face despite Plaintiff's visible inability to defend himself from a serious risk of harm from the Fresno Bulldog affiliated inmate attackers, due to some personal bias.

Given the disputed facts and circumstances here, including disputed facts regarding Defendant's knowledge, intent, and motivations for his use of force against Plaintiff, the Court cannot find as a matter of law Defendant is entitled to qualified immunity because he acted reasonably under the circumstances. Assuming Plaintiff's version of events is true, no reasonable officer would have believed that purposely using force to inflict harm, or failing to protect an inmate for personal reasons, was lawful. The Court reiterates that to the extent Plaintiff's version of events lack credibility and/or is undermined by some of the facts presented, that evaluation must be made by the jury. See, e.g., Scott, 550 U.S. at 380; Cortez, 776 F.3d at 1052–53.

Therefore, the Court declines to grant summary judgment to Defendant on the grounds of qualified immunity.

///
///
///
///

## IV.

## CONCLUSION

Based on the foregoing, it is HEREBY ORDERED that Defendant's motion for summary judgment, filed February 24, 2017 (ECF No. 112) is DENIED, in its entirety.

IT IS SO ORDERED.

Dated: __June 15, 2017__

UNITED STATES MAGISTRATE JUDGE